***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Baddour. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Wausau Insurance Companies is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. By correspondence dated June 20, 2003 from plaintiff's counsel, the parties submitted a stipulation to an average weekly wage of $183.82.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was thirty-nine years old. Plaintiff graduated from high school and has taken some college courses.
2. Plaintiff was employed as a sales clerk in defendant-employer's clothing store. Plaintiff's job duties included assisting customers with sales and stocking merchandise.
3. On September 21, 2001, plaintiff was instructed to unload boxes of clothing from a delivery truck. While unloading the boxes, plaintiff felt the onset of pain in her back.
4. Plaintiff did not immediately report the incident because her manager was not in the store at the time. Plaintiff did not seek immediate medical attention because she did not believe it was necessary. Plaintiff reported the incident to her supervisor several days later.
5. On October 4, 2001, plaintiff was moving a rack of clothing weighing approximately 100 pounds when she again felt the onset of pain in her back.
6. On October 5, 2001, plaintiff sought chiropractic treatment with Dr. Anthony del Genovese at Nelson Nelson Chiropractic. Dr. del Genovese took plaintiff out of work. Beginning October 26, 2001, plaintiff received additional chiropractic treatment from Dr. Robert W. Twadell at Chiropractic Advantage.
7. On November 13, 2001, plaintiff began treating with Dr. Charles W. Pinnell III at Primary Care Plus. Dr. Pinnell diagnosed plaintiff with a lower back strain and continued to keep her out of work due to her back condition and an unrelated medical problem regarding an ovarian cyst.
8. Dr. Pinnell next saw plaintiff on November 27, 2001. Dr. Pinnell testified that while his November 27, 2001 medical note does not address return to work, he would have released plaintiff to return to work light duty at this time with restrictions of no lifting over five pounds.
9. At some point in November 2001, plaintiff returned to work in the position of operating the cash register.
10. In late December 2001, the employees of employer-defendant were informed that the store would be closing after the holiday season.
11. Plaintiff testified that she was unable to work due to pain, and on January 8, 2002, plaintiff voluntarily left her employment. On February 23, 2002, the store closed.
12. Plaintiff has not worked since January 8, 2002 and has not pursued any other employment.
13. On August 15, 2002, plaintiff saw Dr. John J. Mingle, a doctor in the Department of Neurology at UNC Hospitals in Chapel Hill, N.C. Dr. Mingle diagnosed plaintiff with myofascial pain syndrome. He prescribed Celebrex, an anti-inflammatory drug, and Flexeril, a muscle relaxant drug. Plaintiff was referred for an MRI.
14. An MRI was conducted on September 13, 2002. The results of the MRI were within normal limits and ruled out any significant pathology or structural lesions.
15. Plaintiff did not return to Dr. Mingle again until May 30, 2003. In his medical note, Dr. Mingle reports that plaintiff was "looking for a note or letter to state she is unable to work." Dr. Mingle noted that plaintiff "does not believe in pain medications and has not taken anything for her discomfort" and that he has "once again suggested taking Celebrex along with a muscle relaxant." Dr. Mingle also referred plaintiff to physical therapy, occupational therapy, and aqua therapy for range of motion and strength exercises. Although plaintiff was not employed, Dr. Mingle wrote her a note "to take off of work for approximately 2 to 4 weeks until she obtains physical therapy and occupational therapy." Plaintiff did not receive this treatment.
16. With the exception of Dr. Mingle's note taking plaintiff out of work for two to four weeks to receive therapy, no doctor offered an opinion that plaintiff has been unable to work since January 8, 2002. Plaintiff offered no evidence of a reasonable job search to find work within her restrictions or that such a job search would be futile due to preexisting conditions.
17. Based upon the greater weight of the competent medical evidence of record, plaintiff's back condition is casually related to her incidents at work on September 21, 2001 and October 4, 2001.
18. Plaintiff was temporarily totally disabled from October 5, 2001 until she returned to work in November 2001. Plaintiff has failed to show that she has been totally disabled since she removed herself from employment on January 8, 2002.
19. Defendants did not defend this claim without reasonable ground.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by specific traumatic incident arising out of and in the course of her employment on September 21, 2001 and October 5, 2001. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the evidence of record establishes a causal relationship between the work-related incidents on September 21, 2001 and October 5, 2001 and plaintiff's back condition.
3. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $122.55 per week for the period from October 5, 2001 until she returned to work in November 2001. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the treatment recommended by Dr. Mingle. N.C. Gen. Stat. §§ 97-2(19); 97-25.
5. Plaintiff's claim is not time-barred. N.C. Gen. Stat. § 97-22.
6. Plaintiff is not entitled to attorney fees. N.C. Gen. Stat. §97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorney fee approved below, defendants shall pay temporary total disability compensation to plaintiff at the rate of $122.55 per week for the period from October 5, 2001 until she returned to work in November 2001. Because this compensation has accrued, it shall be paid in a lump sum.
2. As plaintiff has not been evaluated for a permanent partial disability rating, this Opinion and Award does not address this issue. However, if in the future the parties are unable to reach an agreement regarding this issue, either party may request a hearing from the Commission.
3. Defendants shall pay for medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the treatment recommended by Dr. Mingle.
4. Plaintiff's request for attorney fees pursuant to N.C. Gen. Stat. § 97-88.1 is denied.
5. A reasonable attorney fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in one lump sum of the accrued amount due plaintiff.
6. Defendants shall pay the costs due the Commission.
This the ___ day of December, 2004.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER